UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| MICKEL J. MCNEIL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:23-cv-00480-JPH-MG |
| | ) |
| KEVIN GILMORE Assistant Warden, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND GRANTING MOTION TO DISMISS**

Mickel McNeil alleges that the defendants violated his right to due process by charging his inmate trust account $249 to pay for his electronic tablet, which had been destroyed. Defendants have moved for summary judgment on the affirmative defense that Mr. McNeil failed to exhaust administrative remedies before filing suit. Defendant Gardner has also filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendants' motion for summary judgment, dkt. [24], is **denied**, while Defendant Gardner's motion to dismiss, dkt. [30], is **granted**.

**I. Motion for Summary Judgment**

When the Court screened the complaint under 28 U.S.C. § 1915A, it identified plausible Fourteenth Amendment due-process claims against five defendants based on the following allegations:

> When Mr. McNeil received his personal property, it was soaked in mace. His electronic tablet was destroyed and appeared to have been submerged in a toilet. Ms. Porter, Ms. Fischer, Ms. Gardner, Lieutenant Yarber, and Assistant Warden Gilmore refused to provide

> Mr. McNeil with a replacement tablet or allow him to purchase a new one. Rather, they placed a $249.00 debt on his account after determining (without a disciplinary proceeding) that his refusal to leave his cell during the original mace-spraying incident caused the tablet to be damaged.

Dkt. 9 at 1. Defendants seek summary judgment on their affirmative defense that Mr. McNeil failed to exhaust administrative remedies.

### A.     Summary Judgment Standard

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court is required to consider only the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour the record" for evidence that is potentially

relevant. *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Mr. McNeil has not responded to the summary judgment motion, and the deadline has passed. When a summary judgment motion is unopposed, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment," though, "the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

B.  **Prison Litigation Reform Act and Exhaustion of Administrative Remedies**

On a motion for summary judgment, "[t]he applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Sys., Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). In this case, the substantive law is the Prison Litigation Reform Act (PLRA), which requires that a prisoner exhaust available administrative remedies before suing over prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (citation omitted).

"To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (citing *Woodford v. Ngo,* 548 U.S. 81, 90–91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)).

"Because exhaustion is an affirmative defense," the defendants face the burden of establishing that "an administrative remedy was available and that [Mr. McNeil] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015). "[T]he ordinary meaning of the word 'available' is 'capable of use for the

accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 578 U.S. 632, 642 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (internal quotation omitted).

### C. Facts

The Indiana Department of Correction (IDOC) maintains an Offender Grievance Process, which is an administrative remedy program designed to allow inmates "to express complaints and topics of concern for the efficient and fair resolution of legitimate offender concerns." Dkt. 24-2 at § II. Inmates can use the grievance process to resolve concerns about "[a]ctions of individual staff, contractors, or volunteers" and "concerns relating to conditions of care or supervision within the" IDOC. *Id.* at § IV(A).

To exhaust the grievance process's remedies, an inmate must complete four steps. First, the inmate must attempt to resolve his concern informally. *Id.* at § IV(1) (formal grievance must follow "unsuccessful attempts at informal resolutions"). Second, if the inmate is unable to achieve a satisfactory resolution informally, he must submit a formal grievance to the grievance specialist. *Id.* at § X. Third, if the inmate is dissatisfied with the grievance specialist's response, he must submit an appeal to the grievance specialist, who will transmit the appeal to the warden or the warden's designee. *Id.* at § XI. Fourth, if the inmate is dissatisfied with the warden's response, he must submit a second appeal to the IDOC's grievance manager. *Id.* at § XII.

An inmate must submit an appeal to the grievance specialist within five business days after the date of the grievance response. *Id.* at § XI. Alternatively, if the grievance specialist accepts a formal grievance and the inmate does not receive a response within 20 business days, he may submit his appeal as though the grievance had been denied. *Id.* at § X(C).

A grievance appeal must be submitted on State Form 45473. Dkt. 24-2 at § XI. The state defendants designate no evidence indicating how an inmate can obtain State Form 45473 to submit a grievance appeal.

From the defendants' designated evidence, most of the facts relevant to Mr. McNeil's use of the grievance process are undisputed. Mr. McNeil submitted six grievances to Ms. Passmore "concerning the allegations regarding his tablet underlying his complaint in this matter", dkt. 24-1 at 6 ¶ 36. These grievances were submitted as required on State Form 45471 on the following dates: (1) May 30, 2023, dkt. 24-1 ¶ 38; (2) June 8, 2023, *id.* ¶ 42; (3) June 18, 2023, *id.* ¶ 46; (4) June 27, 2023, *id.* ¶ 50; (5) June 28, 2023, *id.* ¶ 56; and (6) August 3, 2023, *id.* ¶ 60.

Four of those grievances were immediately returned to Mr. McNeil without being processed because they did not comply with the Offender Grievance Process. Dkt. 24-1 ¶¶ 40; 44; 47; 56.  Ms. Passmore accepted, reviewed, and denied one grievance on the merits—Grievance No. 23-147734, submitted and responded to on June 27, 2023. *Id.* ¶¶ 51–52.  Finally, Ms.

Passmore accepted but did not respond to one of the grievances, Grievance No. 23-155909, submitted on August 7, 2023.[1] *Id.* ¶¶ 60–63.

Mr. McNeil asserts in his complaint, which is verified under penalty of perjury, "I filed several grievances in attempt to exhaust my remedy's, Grievance Spec. Madison Gilbert reject, unprocessed or never responded to All of my Grievances—Then refused to send me apeal forms to move on to next phase." Dkt. 2 at 7–8 (errors in original).

### D.  Analysis

It is undisputed from the designated evidence that Mr. McNeil did not submit an appeal on State Form 45473, the form that the Grievance Policy requires a prisoner to use to initiate an appeal of the Grievance Specialist's response, with respect to any of his six relevant grievances. Dkt. 24-1.

The state defendants do not, however, address Mr. McNeil's sworn statement that Ms. Passmore "refused to send me apeal [sic] form to move on to next phase." Dkt. 2 at 8. Because Mr. McNeil swore his complaint under penalty of perjury, that assertion functions as affidavit testimony for purposes of the summary judgment motion. *Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017). Furthermore, Defendants have not designated evidence showing that State Form 45473 was otherwise available to Mr. McNeil. Viewed in the light most favorable to Mr. McNeil, the facts therefore support a finding that

---

[1] Some of the relevant grievances returned to Mr. McNeil are signed with the name "Madison Gilbert," dkt. 27-1–6, which is the name that Mr. McNeil refers to in his complaint, dkt. 2. The Court uses the name "Madison Passmore," which is what Ms. Passmore used in her declaration, dkt. 24-1.

7

Ms. Passmore refused to give him a Form 45473, making administrative remedies unavailable to him. *See Hill v. Snyder*, 817 F.3d 1037, 1041 (7th Cir. 2016) (citing *Dale v. Lappin*, 376 F.3d 652, 655–56 (7th Cir. 2004)) ("[E]xhaustion is not required when the prison officials responsible for providing grievance forms refuse to give a prisoner the forms necessary to file an administrative grievance."); *Gooch v. Young*, 24 F.4th 624, 628 (7th Cir. 2022) ("Under *Hill* and *Dale*, the prison's refusal to provide the form suffices to show that [the prisoner] did not have administrative remedies available.").

    Because the state defendants have not met their burden of demonstrating that administrative remedies were available, their summary judgment motion must be denied. However, the exhaustion defense remains pending, and the Court must resolve it before opening merits discovery. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). Because the undisputed evidence before the Court shows that administrative remedies were not available to Mr. McNeil, the Court notifies the parties under Rule 56(f)(1) that it intends to grant summary judgment in Mr. McNeil's favor on the exhaustion issue. The state defendants will have **through January 10, 2025**, to show cause why the Court should not grant summary judgment in Mr. McNeil's favor. If they oppose summary judgment, they must show cause why they did not address Mr. McNeil's sworn testimony that he was denied appeal forms in their summary judgment motion. Alternatively, the state defendants may withdraw the exhaustion defense by this date.

8

## II. Motion to Dismiss

Defendants may move under Federal Rule of Civil Procedure 12(b)(6) to dismiss claims for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim is one that allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a plausible claim "must allege enough details about the subject-matter of the case to present a story that holds together," *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021), "but it need not supply the specifics required at the summary judgment stage." *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021). When ruling on 12(b)(6) motion, the Court "accept[s] the well-pleaded facts in the complaint as true," *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011), and gives the plaintiff "the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017) (cleaned up). However, it will not defer to "legal conclusions and conclusory allegations merely reciting the elements of the claim." *McCauley*, 671 F.3d at 616.

Ms. Gardner has filed a motion to dismiss Mr. McNeil's claim against her for failure to state a claim. Dkt. 30. Ms. Gardner is an employee of BCForward, a subcontractor to ViaPath, which contracts with the prison to

9

provide telecommunications services. Dkt. 31 at 4. Defendant argues that Mr. McNeil fails to state a claim under Section 1983 because he "does not even attempt to allege any facts establishing how Ms. Gardner, a private sub-contractor employee, was acting under the color of state law for purposes of his United States Constitutional claim." *Id.*

"Because § 1983 liability only extends to private parties when they act 'under color of state law,' . . . the threshold question . . . is whether the defendants . . . were engaged in state action at the time of the alleged constitutional violations." *Scott v. Univ. of Chicago Med. Ctr.*, 107 F.4th 752, 757 (7th Cir. 2024). While state action is ultimately a "fact-based assessment", the Seventh Circuit has recognized "several scenarios" where a private party has been found to have engaged in state action: (1) the "joint action" or "conspiracy" theory where a private party conspires with the government to infringe on a plaintiff's rights;  (2) when a party performs "a function that has traditionally been 'the exclusive prerogative of the State'"; and (3) when a private party and the State are interdependent 'to the point of largely overlapping identity.' *Id.* at 757.

Here, the complaint does not allege facts supporting an inference that Ms. Gardner conspired with Department of Correction personnel to deprive Mr. McNeil of $249.00 without due process.  Dkt. 2.  Similarly, no allegations in the complaint support an inference that Indiana or the Department of Correction have delegated a public function to ViaPath and/or BCForward or that Indiana or its Department of correction are entwined in the management or control of

10

ViaPath and/or BCForward to the extent that their identities overlap. The complaint alleges only that Ms. Gardner "violated user agreement by abusing her discretion" when she charged him $249.00 to replace his tablet and that Ms. Gardner later stated, "If McNeil had cuffed up his tablet wouldn't be broken." Dkt. 2 at 6; 12. There is no express allegation that Ms. Gardner took those actions under color of state law, nor are there facts alleged that would support such an inference.

In sum, to get past the pleading stage on the theory that Ms. Gardner acted under color of state law, Mr. McNeil "must point to more than 'mere allegations of joint action or a conspiracy' to demonstrate that [Ms. Gardner] acted under color of state law." *Scott*, 107 F.4th at 758. Mr. McNeil has not made any allegations that Ms. Gardner acted under color of state law. And by not responding to Ms. Gardner's motion to dismiss, he has not invoked any specific theory that would support a finding of state action. Ms. Gardner is therefore entitled to dismissal under Rule 12(b)(6).

### III. Conclusion

The state defendants' motion for summary judgment, dkt. [24], is **denied** for the reasons discussed above in Part I(D). The state defendants will have **through January 10, 2025**, to show cause why the Court should not grant summary judgment in Mr. McNeil's favor.

Ms. Gardner's motion to dismiss, dkt. [30], is **granted**. Claims against Ms. Gardner are dismissed **with prejudice**, and the **clerk is directed** to terminate her from the docket. No partial final judgment will issue.

11

**SO ORDERED.**

Date: 12/13/2024

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

MICKEL J. MCNEIL
998836
WABASH VALLEY – CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

All electronically registered counsel