UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| MICKEL J. MCNEIL, Plaintiff, | ) | |
| v. | ) | No. 2:23-cv-00480-JPH-MG |
| KEVIN GILMORE, et al., Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Mickel McNeil filed this civil rights lawsuit alleging that the defendants violated his due process rights by charging him for a replacement tablet. The defendants have moved for summary judgment, dkt. [51], and Mr. McNeil has not responded. Because none of the defendants were personally involved in the decision to charge him for his tablet, that motion is **granted**.

## I.
## Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has

to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

Mr. McNeil failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant 'still [has] to show that summary judgment [is] proper given the undisputed facts,'" *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011), with those facts taken as usual in the light most favorable to the nonmovant." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. McNeil and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

### A. The Parties

Mr. McNeil was at all relevant times an Indiana Department of Correction ("IDOC") prisoner housed at Wabash Valley Correctional Facility.[1]

Defendants were all IDOC employees at Wabash Valley. Kevin Gilmore was deputy warden of re-entry. Dkt. 51-2 at 1, 2. Richard Yarber was a correctional lieutenant. Dkt. 51-3 at 1. Jacquelynne Porter-Marts was a casework manager who was assigned to Mr. McNeil during the relevant events. Dkt. 51-5 at 1; dkt. 51-1 at 28-29. Katherine Fischer was a Unit Team Manager ("UTM") and Ms. Porter-Marts's supervisor. Dkt. 51-4 at 1-2.

### B. Tablet Policy

Inmates are issued electronic tablets that they can use to correspond with family and friends and for entertainment and educational purposes. Dkt. 51-11. BCforward, a company contracted by ViaPath Technologies (formerly known as GTL), is in charge of the tablets. Dkt. 51-1 at 20. Mr. McNeil signed an Incarcerated Individual Tablet User Agreement ("User Agreement"). *Id.* Any violations of the Incarcerated Individual Tablet User Agreement can result in

[1] Mr. McNeil has since been released from IDOC. Dkt. 56. He had not provided the Court with updated contact information.

the inmate receiving a Report of Conduct for a Class B Code 207 Infraction – Unauthorized Use or Possession of an Electronic Device or a 215 Destruction or Theft of State Property. *Id.* Additionally, if a tablet is damaged, the inmate's "tablet privileges will be suspended until the replacement fee of $249.99 is paid in full." *Id.*

**C. Cell Extraction and Resulting Loss of Tablet**

On May 26, 2023, Mr. McNeil was extracted from his cell. Dkt. 51-1 at 30-31. During the extraction, staff sprayed OC spray into the cell. *Id.* Lt. Yarber was the only defendant on the scene during the extraction. *Id.* at 32.

After a cell extraction involving OC spray, correctional staff members take inmates' property out of their cell, decontaminate it, and then return it to the individual. *Id.* at 36. When Mr. McNeil received his property, he noticed that his tablet was wet. *Id.* at 41-42. Mr. McNeil believed that someone had placed his tablet in a toilet because it had pieces of tissue on it, while his other property was not wet but still had OC spray residue on it. *Id.*

Employees of a ViaPath subcontractor decide whether inmates should be charged for damaged tablets, and the prison's business office handles charges to inmates' trust accounts. Dkt. 51-3 at 2; dkt. 51-4 at 2; dkt. 51-5 at 2. Jennifer Gardner, a ViaPath site administrator, asked Lt. Yarber by email if he knew anything about Mr. McNeil's claim that "staff damaged his tablet" and that "it was full of water."[2] Dkt. 51-9 at 2. Lt. Yarber responded that he was not

---

[2] Ms. Gardner was formerly a defendant in this action. The Court granted her motion to dismiss on December 13, 2024, on the basis that there was no allegation that she was a state actor. Dkt. 33 at 9-11.

sure how Mr. McNeil's tablet was damaged, and he provided information gathered through an interview with Mr. McNeil. *Id.*

At Ms. Gardner's request, Ms. Porter-Marts placed Mr. McNeil's tablet into her mailbox for her to review. *Id.* Ms. Gardner later emailed, "In looking at his tablet I am going to say he will have to pay for it. I do agree it was more likely damaged during the cell extraction. [I]t was his choice to go that route instead of just cuffing up peacefully." Dkt. 51-9 at 1.

A ViaPath staff member directed Ms. Porter-Marts to present Mr. McNeil with a choice between (1) signing a request for remittance slip (State Form 35720) for the amount charged by ViaPath for the damaged tablet, or (2) receive a conduct report for destruction of state property. Dkt. 51-4 at 3; dkt. 51-5 at 3. Providing an inmate with these two options was a standard practice at Wabash Valley. Dkt. 51-4 at 3; dkt. 51-5 at 3. If Mr. McNeil had chosen the conduct report, he would have had a disciplinary hearing at which he could have called witnesses and presented evidence. Dkt. 51-4 at 3; dkt. 51-5 at 3.

Ms. Porter-Marts recalls that Mr. McNeil chose to sign the remittance slip, instead of receiving a conduct report, on June 14, 2023. Dkt. 51-5 at 3; dkt. 51-10.[3] The remittance slip was for the total of $249.99 with "purpose of remittance" filled out as "GTL tablet." *Id.* Ms. Porter-Marts then placed the

[3] Mr. McNeil denied that he signed the remittance form and instead accused Ms. Porter-Marts of forging his signature. Dkt. 51-1 at 51-52. But in a grievance Mr. McNeil submitted on June 26, 2023, he acknowledged that he submitted the remittance form. Dkt. 27-4 at 2 ("So I did fill out a remittance form & $249.99 was placed on my debt account"). Regardless, even if there were admissible evidence that someone other than Mr. McNeil placed his signature on the form, there is no designated evidence that *Ms. Porter-Marts* (or any other Defendant) did so.

remittance slip in the trust mailbox, where it was processed by the business office. Dkt. 51-5 at 3.

On June 21, 2023, Deputy Warden Keith Vinardi asked Defendants Fischer, Yarber, and Porter-Marts whether Mr. McNeil's cell was decontaminated after the cell extraction, and whether Defendants Fischer, Yarber, and Porter-Marts had any documentation from ViaPath/GTL about the tablet device. Dkt. 51-8. Ms. Fischer responded that Mr. McNeil was told by ViaPath staff that he must pay for the tablet device, and Ms. Porter-Marts confirmed that Ms. Gardner said Mr. McNeil would be responsible for paying for it. *Id.*

On July 5, Mr. McNeil wrote to Mr. Gilmore about the incident, lamenting in part that because he did not receive a conduct report, he had not had a hearing to prove he was not responsible for damaging the tablet. Dkt. 51-7 at 1. Mr. Gilmore had no previous record of corresponding with Mr. McNeil about this incident, so he forwarded the correspondence to Lt. Yarber and Ms. Fischer. *Id.* at 3. Ms. Fischer reiterated that Mr. McNeil "had been told by GTL he must pay for the broken one[.]" *Id.*

None of Defendants' roles at the prison involved deciding whether an inmate should be charged for a damaged tablet, nor were any of them involved in deciding to charge Mr. McNeil for his tablet or placing a debt on his trust account. Dkt. 51-2 at 2; dkt. 51-3 at 2; dkt. 51-4 at 2; dkt. 51-5 at 2.

## III.
## Discussion

Mr. McNeil proceeds on a Fourteenth Amendment due process claim about the deprivation of the funds to pay for the tablet without due process. Dkt. 9. "The Fourteenth Amendment guarantees prisoners due process before prison officials deprive them of a protected interest." *Wilson v. Castaneda*, 143 F.4th 814, 818 (7th Cir. 2025), *cert. denied,* No. 25-921, 2026 WL 1052013 (U.S. Apr. 20, 2026). An inmate's "property interest in the funds in his prison trust account is a protected interest." *Id.* Thus, an inmate is entitled to receive certain procedural protections before he can be deprived of this interest. *Id.*

Here, consistent with practice at Wabash Valley, Mr. McNeil was given the choice of receiving a conduct report, or agreeing to pay for the tablet's replacement by consenting to remittance. If he had chosen the conduct report, he would have had a disciplinary hearing with the associated due process protections, including an impartial decisionmaker, the right to present evidence, and a reasoned decision. *Id.* (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)). The undisputed designated evidence here, however, shows that Mr. McNeil instead agreed to remittance. Dkt. 51-10; dkt. 27-4 at 2 ("So I did fill out a remittance form & $249.99 was placed on my debt account"); *see Manistee Apartments, LLC v. City of Chicago*, 844 F.3d 630, 633 (7th Cir. 2016) ("[V]oluntary payment is not a property deprivation.").

Even if Mr. McNeil had not chosen remittance, the undisputed designated evidence reflects that none of the Defendants were responsible for deciding to

charge Mr. McNeil for the damaged tablet. "To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023). Instead, Ms. Gardner, who was employed by ViaPath, was the individual who decided that Mr. McNeil should be charged. Dkt. 51-9 at 3. Mr. McNeil acknowledged as much during his deposition. Dkt. 51-1 at 51 ("When my tablet was destroyed, I immediately started complaining. They contacted Jennifer Gardner. Jennifer Gardner immediately put a $249 hold on my account to pay for the destruction of this aforementioned tablet.").

Defendants are therefore entitled to summary judgment because they had no control over his trust account and were not involved in charging Mr. McNeil the fee to replace the tablet.

## IV.
## Conclusion

Defendants' motion for summary judgment is **granted**. Dkt. [51].

Final judgment consistent with this Order and the Court's December 13, 2024, Order Denying Motion for Summary Judgment [on the Exhaustion Defense] and Granting Motion to Dismiss shall now enter.

Mr. McNeil has not provided the Court with an updated address since his release from prison, so no copy of this Order or the Final Judgment can be mailed to him. The clerk shall provide a copy upon request.

**SO ORDERED.**

Date: 9/1/2026

James Patrick Hanlon

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

MICKEL J. MCNEIL
998836
No address on file—copy to be provided upon request

All Electronically Registered Counsel